## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO

VIRTUDES ARCE,

    **Plaintiff**,

            **v.**

JOHN E. POTTER, POSTMASTER GENERAL,

    **Defendant.**

**Civil No.** 10-1032 (FAB)

### OPINION AND ORDER[1]

BESOSA, District Judge

    Plaintiff Virtudes Arce ("Arce" or "plaintiff") brings this action against Postmaster General John E. Potter ("defendant") pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, and the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 701 *et seq.*, alleging intentional discrimination, hostile work environment, and retaliation.  (Docket No. 1.)

    Pending before the Court is defendant Potter's motion for summary judgment.  (Docket Nos. 35 & 37.)  For the reasons set forth below, defendant's motion for summary judgment is **GRANTED.**

## I.  Procedural History

    On January 20, 2010, plaintiff Arce filed a complaint alleging intentional discrimination, hostile work environment, and

---

[1] Alyssa Iglesias-Serpa, a third-year student at University of North Carolina Law School, assisted in the preparation of this Opinion and Order.

retaliation pursuant to Title VII and the Rehabilitation Act.
(Docket No. 1.)  On May 20, 2011, defendant Potter answered the
complaint, subsequently filing a motion to dismiss the complaint
partially for lack of subject matter jurisdiction on October 27,
2010.  (Docket Nos. 8 & 23.)  The Court referred the motion to
Magistrate Judge Justo Arenas, who issued a report recommending
that the motion to dismiss be denied.  The Court adopted the
recommendation in full on June 22, 2011.  (Docket Nos. 12, 31
and 50.)

On May 4, 2011, defendant Potter filed a motion for summary
judgment, which plaintiff opposed on May 27, 2011 (Docket Nos.
35-37 & 46.)  On June 8, 2011, defendant Potter replied to plaintiff's
opposition to the summary judgment motion. (Docket No. 49.)
Defendant Potter moves for summary judgment on the grounds that
Ms. Arce failed to establish her claims of (1) disability
discrimination; (2) retaliation; and (3) hostile work environment.

## II.  Statement of Uncontested Facts

Plaintiff Arce is a resident of Puerto Rico and has been an
employee with the United States Postal Service ("USPS") since 1986,
having worked at the Bayamon Branch since 1989 as a distribution
clerk.  (Docket No. 36 at ¶ 5; Docket No. 49 at ¶ 1.)  She has been
hearing impaired since childhood and communicates primarily though
sign language, gestures, and in writing.  (Docket No. 46-1 at ¶ 11,
12, 13, 14; Docket No. 49 at 3.)  Pursuant to an EEO complaint

filed in 2003 and a settlement agreement in 2005, the United States
Postal Service (USPS) is obligated to provide Ms. Arce with
interpreter services, a Text Telephone (TTY), and placement within
sight of emergency lights.  (Docket No. 23-1; Docket No. 36 at
¶¶ 8-9, 14; Docket No. 46-1 at ¶¶ 17, 27.)  She works six hours
daily as a part-time distribution clerk, handling certified mail
and is not scheme-or window-qualified.  (Docket No. 36 at ¶¶ 8, 10,
26; Docket No. 36-4 at 2, ¶ 5.)

Brenda Rios ("Rios") worked at the Bayamon Branch as a
customer service supervisor from August 2008 through February 2009.
(Docket No. 36 at ¶ 7; Docket No. 46-1 at ¶ 31; Docket No. 36-4 at
¶ 2.)  During this period, Jorge Colon ("Colon") served as the
branch manager.  (Docket No. 46-1 at ¶ 35; Docket No 49 at 4;
Docket No. 36-8 at ¶ 2.)  Colon and Rios never held themselves out
to be Ms. Arce's direct supervisors.  (Docket Nos. 36-4 at ¶ 2;
Docket No. 36-8 at ¶ 2.)  Aside from the services provided for
Ms. Arce's hearing impairment, Colon and Rios were unaware of any
additional accommodations needed by her because plaintiff never
submitted medical documentation requesting accommodations. (Docket
No. 36 at ¶ 18; Docket No. 36-4 at 7-8, ¶ 13.)

Defendant Potter, though, was aware of a shoulder condition
which Ms. Arce had, and had asked her to desist when she performed
certain activities that caused her pain.  (Docket No. 36 at ¶ 23;
Docket No. 46-1 at ¶ 43.)  Although plaintiff was not granted light

duty because of her cervical and shoulder bursitis, she was only permitted to handle certified mail. (Docket No. 36 at ¶ 18.) A change in Ms. Arce's work schedule had also been approved, but due to her poor attendance policy, she had difficulty complying with the adjusted schedule. (Docket No. 36 at ¶ 15-16; Docket No. 46-1 at ¶ 37; Docket No. 36-4 at 6, ¶ 11; Docket No. 36-5 at 7, ¶ 12.) Despite her "impairment or deafness," however, Ms. Arce was able to perform her job during the relevant period at the USPS. (Docket No. 46-1 at ¶ 15; Docket No. 49 at 3.)

        Plaintiff Arce predicates her claims on a series of interactions with Rios and situations arising at work. In September, 2008, the work policy was amended only to permit a few senior schemers to work holidays; plaintiff continued to rely, however, on past procedures used by the USPS. (Docket No. 36 at ¶ 12; Docket No. 46-1 at ¶¶ 22-23.) Despite not being asked, Ms. Arce appeared to work on Labor Day, 2008. (Docket No. 36 at ¶ 21; Docket No. 46-1 at ¶ 23; Docket No. 36-4 at 4, ¶ 8.) Rios confronted Arce because she had appeared to work without being asked; after a belligerent exchange, Arce left the premises to avoid police involvement. (Docket No. 36 at ¶ 20; Docket No. 46-1 at ¶ 23.) She states that after this incident, the working environment around her changed and she noticed that coworkers and supervisors began to ignore her. (Docket No. 46-1 at ¶ 26; Docket No. 46-3 at 3, ¶ 3(d).)

Plaintiff Arce also did not receive Voluntary Early Retirement ("VERA") documents in time to apply for it. (Docket No. 36 at ¶ 13; Docket No. 46-1 at ¶ 5.) Additionally, plaintiff complains that she was not provided computer training or permitted to park in certain parking spots due to the limited number of spaces available. (Docket No. 36 at ¶ 17, 19; Docket No. 36-4 at 7, ¶ 12, at 8 ¶ 14; Docket No. 46-1 at ¶ 58.) Also, plaintiff Arce was not always provided with interpreter services because the USPS only paid for those services roughly on a bi-monthly basis. (Docket No. 36 at ¶ 14; Docket No. 36-6 at ¶ 10; Docket No. 36-9; Docket No. 46-1 at ¶ 20.)

On March 9, 2009, plaintiff filed an EEO complaint against Rios, Colon, and Grace Rodriguez ("Rodriguez"), alleging that she suffered disability discrimination, retaliation, and a hostile work environment in 2008. (Docket No. 36 at ¶ 3; Docket No. 46-1 at ¶ 1; Docket No. 36-1.) On April 24, 2009, the USPS began investigating Arce's claims that she was (1) denied holiday work, (2) not offered VERA, (3) denied accommodation of work location and interpreter, (4) charged leave without pay ("LWOP") and sick leave, (5) denied training, (6) required to obtain a medical evaluation, (7) denied parking, and (8) mistreated and verbally abused by her supervisor. (Docket No. 36 at ¶ 6; Docket No. 46-1 at ¶ 1; Docket No. 36-3.) On October 20, 2009, the EEOC dismissed her complaint, determining that Ms. Arce failed to establish that she was

subjected to discrimination and/or retaliation, but notified plaintiff of her right to pursue a civil cause of action. (Docket No. 36 at ¶ 4; Docket No. 46-1 at ¶ 1; Docket No. 36-2.) Ms. Arce then brought this action against defendant Potter for discriminatory treatment, retaliation, and hostile work environment. (Docket No. 46-1 at ¶ 2; Docket No. 1 at 1.1.)

## III. Summary Judgment Standard

The court's discretion to grant summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure.  Rule 56 states, in pertinent part, that the court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); See also Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52.  (1st Cir. 2000).

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  See Fed.R.Civ.P. 56(c).  The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once a properly supported motion has been presented, the opposing party has the burden of demonstrating that a trial-worthy

issue exists that would warrant the court's denial of the motion
for summary judgment.  For issues where the opposing party bears
the ultimate burden of proof, that party cannot merely rely on the
absence of competent evidence, but must affirmatively point to
specific facts that demonstrate the existence of an authentic
dispute.  See Suarez v. Pueblo Int'l., Inc., 229 F.3d 49 (1st Cir.
2000).

     In order for a factual controversy to prevent summary
judgment, the contested facts must be "material" and the dispute
must be "genuine".  "Material" means that a contested fact has the
potential to change the outcome of the suit under governing law.
The issue is "genuine" when a reasonable jury could return a
verdict for the nonmoving party based on the evidence.  See
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  It is
well settled that "[t]he mere existence of a scintilla of evidence"
is insufficient to defeat a properly supported motion for summary
judgment."  Id. at 252.  It is therefore necessary that "a party
opposing summary judgment must present definite, competent evidence
to rebut the motion."  Maldonado-Denis v. Castillo-Rodriquez, 23
F.3d 576, 581 (1st Cir. 1994).

     In making this assessment, the court "must view the entire
record in the light most hospitable to the party opposing summary
judgment, indulging in all reasonable inferences in that party's
favor."  Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990).

The court may safely ignore, however, "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

To aid the Court in the task of identifying genuine issues of material fact in the record, the District of Puerto Rico has adopted Local Rule 56.  D.P.R. Loc.Civ.R. 56.  Local Rule 56(b) requires that a party moving for summary judgment submit, in support of the motion, a separate, short, and concise statement of material facts as to which the moving party contends there is no genuine issue to be tried.  Further, "[a] party opposing a motion for summary judgment shall submit with its opposition a separate, short and concise statement of material facts.  The opposing statement shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation . . ."  D.P.R. Loc.Civ.R. 56(c).

Further, "[a] party replying to the opposition to a motion for summary judgment shall submit with its reply a separate, short, and concise statement of material facts which shall be limited to any additional facts submitted by the opposing party . . . Unless a fact is admitted, the reply shall support each denial or qualification by a record citation as required by subsection (e) of this rule."  D.P.R. Loc.Civ.R. 56(d).  The Court may disregard any statement of fact not supported by a specific citation to record

material properly considered on summary judgment. D.P.R. Loc.Civ.R. 56(e).

## IV.   DISCUSSION

### A.   Discrimination under the Rehabilitation Act[2]

Ms. Arce alleges that she suffered discrimination by her supervisors on the basis of her disability in violation of the Rehabilitation Act, 29 U.S.C. § 701 *et seq*. The Rehabilitation Act, like its more famous sister statute, the Americans with Disabilities Act ("ADA"), prohibits discrimination against an otherwise qualified individual on the basis of her disability. As a general proposition, the case law construing the ADA applies equally to claims raised under the Rehabilitation Act.[3] Calero-Cerezo v. United States Department of Justice, 355 F. 3d 6, 19 (1st Cir. 2004).

---

[2] Section 504(a) of the Rehabilitation Act states, "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of his or her disability . . . be subjected to discrimination under any program or activity receiving Federal financial assistant." 29 U.S.C. § 794(a).

[3] As mentioned by the defendant, the ADA Amendments Act ("ADA AA") went into effect in January 1, 2009. Pub.L. No. 110-325 (2008). The ADA AA rejects the United States Supreme Court's interpretation of the term disability in Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 198 (2002) and Sutton v. United Air Lines, 527 U.S. 471, 492 (1999). Id. The Court need not concern itself with the ADA AA, however, because the amendments do not apply retroactively. See Carreras v. Sajo, Garcia & Partners, 596 F.3d 25, 33 (1st Cir. 2010); Fournier v. Payco Foods, Corp., 611 F.Supp.2d 120, 129 n. 9 (D.P.R. 2009).

        Plaintiff Arce bears the initial burden of proving each
element of her claim for disability discrimination.  <u>Mendez v.</u>
<u>West</u>, 177 F.Supp.2d 121, 125 (D.P.R. 2001).  To establish a *prima*
*facie* case of disability discrimination, or more specifically, for
failure to accommodate under the Rehabilitation Act, plaintiff must
establish the following three elements:  (1) that she suffered from
a "disability" within the meaning of the Act; (2) that she was a
qualified individual in that she was able to perform the essential
functions of her job, either with or without a reasonable
accommodation; and (3) that despite her employer's knowledge of her
disability, the employer did not offer a reasonable accommodation
for the disability.  <u>Calero-Cerezo</u>, 355 F. 3d at 20; <u>Lebron-Torres</u>
<u>v. Whitehall Laboratories</u>, 251 F.3d 236, 239 (1st Cir. 2001).

    **1.   Disability**

        For the purposes of the ADA and the Rehabilitation
Act, a disability is either (1) a physical or mental impairment
which substantially limits one or more of an individual's major
life activities; (2) a record of such an impairment; or (3) being
regarded as having such an impairment.  42 U.S.C. § 12102(2).
Plaintiff maintains, and defendant does not dispute, that she
suffered from a hearing impairment that substantially limited more
than one of her major life functions.  Ms. Arce also alleges pain
as a result of her cervical and shoulder bursitis, and claims that
a record of her impairment was established and that she was

regarded as having that impairment by her coworkers.  Defendant disputes that plaintiff's bursitis qualifies as a disability.

The determination of whether a plaintiff is disabled under the Act must be made on a case-by-case basis.  Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 198 (2002).  The analysis of whether a plaintiff has a disability within the meaning of the statute depends upon three factors: (1) whether the plaintiff suffered a physical or mental impairment; (2) whether the life activity limited by the impairment qualifies as major; and (3) whether the impairment substantially limited a major life activity.  Calero-Cerezo, 355 F. 3d at 20.  The burden is on plaintiff Arce to establish these three elements.  Id.

Ms. Arce states that her hearing impairment limits the major life activities of hearing and working.  (Docket No. 46 at 10.)  Defendant does not contest that plaintiff's hearing impairment qualifies as a disability under the statute.  (Docket No. 37 at 7.)  The First Circuit Court of Appeals has defined major life activities as "an activity of central importance to people's daily lives."[4]  Calero-Cerezo, 355 F. 3d at 21 (citing Toyota Motor, 534 U.S. at 197).  Ms. Arce has successfully established that major life activities were substantially limited by her

_____

[4]  The Equal Employment Opportunity Commission ("EEOC") regulations interpreting 42 U.S.C. § 12102 define major life activities as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."  29 C.F.R. § 1630.2(I).

hearing impairment.  The word substantially means "considerable" or "specified to a large degree" but it should "not be equated with utter inabilities."  Calero-Cerezo, 355 F. 3d at 21 (internal citations omitted).  Both parties maintain that aside from adjustments in plaintiff's duties, Ms. Arce was able to complete the duties assigned to her. (Docket No. 46 at 6; Docket No. 37 at 2.)  Accordingly, this Court must hold that, pursuant to statute, Arce is "substantially limited" in her major life activities as a result of her hearing impairment and, therefore, disabled under the statute.

Defendant Potter argues that plaintiff only recently claimed that her shoulder bursitis qualifies as a disability, but that it does not meet the requirements under the statute. (Docket No. 37 at 8.)  The Court finds that Ms. Arce fails to satisfy the third element of the disability analysis.  She has not alleged that her cervical and shoulder impairment affects a "major" life activity; therefore, the Court must determine whether a record of the disability exists, or whether plaintiff was regarded as being disabled. (Docket No. 1 at 5.1; Docket No. 46 at 10.)  Despite plaintiff maintaining that defendant had a record of her "medical conditions" and knew of her impairment, she admits that she never submitted medical documentation to defendant regarding her bursitis and request for light duty. (Docket Nos. 36 at ¶ 11; Docket No. 46 at 8-9.)  Further, plaintiff's allegation that the USPS regarded

her as disabled because of an awareness of her bursitis is insufficient to satisfy the statute.  See Toyota Motor Mfg., Ky, Inc. v. Williams, 534 U.S. 184, 195, 122 S.Ct. 681, 690 (2002) (stating that an impairment, alone, does not automatically make someone disabled); see also Rivera-Mercado v. Scotiabank de Puerto Rico-Int'l., 571 F.Supp.2d 279, 287 (D.P.R. 2008) (citing Taylor v. Nimock's Oil Co., 214 F.3d 957, 961 (8th Cir. 2001) (stating that an employer's knowledge or awareness of an impairment neither creates a record nor demonstrates that the employer regarded the employee as disabled under the statute or that the perception caused the adverse employment action).  An accommodation by USPS allowing plaintiff to desist from certain activities is not a concession that Ms. Arce was disabled or regarded as disabled under the statute.  See Marlon v. Western New England College, 124 Fed.Appx. 15 (1st Cir. 2005); see also Castro-Medina v. Procter & Gamble Commercial Co., 565 F.Supp.2d 343, 367 (D.P.R. 2008). Plaintiff repeatedly conflates official accommodations provided under the statute for her hearing disability with allowances granted for her neck and shoulder condition.  Plaintiff has not established that her cervical and shoulder bursitis qualifies as a disability under which she may allege a disability discrimination claim.

Based on the Court's finding that Ms. Arce is not "disabled" with regard to her shoulder impairment, the Court need

not engage in a discussion of whether she was a qualified
individual or was denied reasonable accommodation by defendant for
her condition.  Because Ms. Arce may still have a claim with regard
to her hearing disability, however, the Court continues with the
remaining analysis.

         **2.   Reasonable Accommodation**

         To make out a reasonable accommodation claim under
the Rehabilitation Act, plaintiff Arce must prove (1) that she was
disabled within the meaning of the statute; (2) that she was
qualified to perform the essential functions of the job, either
with or without reasonable accommodations, and (3) that the
employer, despite knowing about the disability, did not acquiesce
to a request for a reasonable accommodation by the employee.  Rios-
Jimenez, 520 F.3d 31, 41 (1st Cir. 2008).  A request for reasonable
accommodation must be "'sufficiently direct and specific,' giving
notice that the employee needs a special accommodation."  Reed v.
LePage Bakeries, Inc., 244 F.3d 254, 261 (1st Cir. 2001) (quoting
Wynne v. Tufts University, 976 F.2d 791, 795 (1st Cir. 1992)).

         The Court's determination that plaintiff's bursitis
does not qualify as a disability under the statute precludes
plaintiff from arguing a bursitis-based discrimination claim.  Even
if plaintiff's bursitis had qualified as a disability, however,
plaintiff would still be unable to demonstrate that defendant
denied her request for accommodation.  Plaintiff's personal choice

not to submit medical documentation to seek accommodation for her
bursitis, as requested by USPS, does not constitute a denial of
reasonable accommodation by the defendant.  (Docket Nos. 36 at
¶ 11.)  Plaintiff's allegation that defendant denied her reasonable
accommodation is also undermined by the undisputed fact that
defendant allowed Ms. Arce to engage in other duties to prevent
discomfort to her arm and neck.  (Docket No. 36 at ¶¶ 18, 23;
Docket No. 46-1 at ¶ 43.)

        Ms. Arce also fails to demonstrate that defendant
denied her request for reasonable accommodation for her hearing
impairment.  Defendant contends that the USPS already accommodated
Arce for her hearing impairment through the use of TTY telephones,
interpreter services, and placement within sight of emergency
lights.  (Docket No. 23 at ¶ 10.)  Defendant and plaintiff provide
evidence that these accommodations were provided for pursuant to
plaintiff's requests.  (Docket Nos. 36 at ¶ 14, Docket No. 46-1 at
¶¶ 28, 30; Docket No. 36-9.)  Plaintiff's allegations merely
suggest that the provisions were irregularly granted or required
plaintiff to notify defendant of any modifications needed, but that
accommodations were ultimately granted.  (Docket Nos. 36-9; Docket
No. 36 at ¶ 14; Docket No. 46 at 11; Docket No. 46-1 at ¶ 33.)
Plaintiff fails to make out a reasonable accommodation claim
because she cannot prove that defendant did not acquiesce to her

requests for a reasonable accommodation due to her hearing impairment.

Plaintiff's inability to establish a disability discrimination claim forecloses the Court from applying the McDonnell Douglas burden-shifting analysis. Based on the above, plaintiff has not established a *prima facie* disability discrimination or reasonable accommodation claim. Therefore, defendant's motion for summary judgment regarding these claims is **GRANTED**.

### B.   Retaliation under Title VII

Title VII of the Civil Rights Act of 1964 prohibits discrimination against employees who have engaged in protected activities including having made a charge, testified, assisted, or participated in a Title VII proceeding or investigation. 42 U.S.C. § 2000e-3. In order to establish a *prima facie* case for retaliation, plaintiff must show (1) that she engaged in protected conduct, (2) that she was subjected to an adverse employment action, and (3) that the adverse employment action is causally linked to the protected conduct. Prescott v. Higgins, 538 F.3d 32, 43 (1st Cir. 2008) (citing Noviello v. City of Boston, 398 F.3d 76, 88 (1st Cir. 2005).

First, although defendant does not contest that plaintiff participated in a protected activity,[5] the Court notes that plaintiff's opposition does not allege involvement in a protected activity, such as opposing an unlawful employment act or participating in a proceeding, hearing, or investigation. Instead, Arce alleges that the Postal Service took retaliatory action against her based on her request for light duty accommodation and the relocation of her desk. (Docket No. 46 at 17.) Even assuming that plaintiff successfully met the first element by establishing that she engaged in a protected activity, she still fails to satisfy the remaining elements of a retaliation claim.

Second, plaintiff Arce has not established that she suffered an adverse employment action. The Supreme Court has held that for a plaintiff to prove that she suffered an adverse employment action, she must show that a "reasonable employee would have found the challenged action materially adverse," which is to say that "it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (internal quotations marks omitted). The adverse actions plaintiff claims to have suffered are not sufficiently serious or

---

[5] Defendant understands the protected activity alleged by plaintiff to be the filing of an EEO claim and the subsequent Settlement Agreement of January 31, 2005. (Docket No. 37 at 13.)

disadvantageous to qualify as adverse employment actions.[6]  Adverse actions "materially change the conditions of the plaintiff's employ," Gu v. Boston Police Dept., 312 F.3d 6, 14 (1st Cir. 2002), and include "demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by other employees." Boston Police Dept., 312 F.3d at 14 (citing Hernandez-Torres v. Int'l. Trading, Inc., 158 F.3d 43 (1st Cir. 1998)).  Arce has not provided that any of the above mentioned examples, or other acts of similar severity, occurred.

The Court now considers the allegations made by plaintiff after the 2005 settlement agreement until November 2008.  Plaintiff alleges that during this period she was subjected to ridicule by her supervisor and colleagues.  (Docket No. 46 at 19.)  She also alleges that she was subjected to increased supervision by Rios. (Docket No. 46 at 18.)  Plaintiff merely alleges that the conditions of her employ changed, but has not shown how others changed in their behavior towards her or how she was harassed

---

[6]  Plaintiff alleges she endured the following adverse employment actions:  (1) asked to follow the Family and Medical Leave Act ("FMLA") despite defendant knowing she did not qualify, (2) having her desk moved multiple times, (3) feeling she was denied working on holidays because of a change in the scheduling policy, (4) not having an interpreter in meetings, (5) being denied assistance with the TTY telephone, (6) having hours deducted from her paycheck despite being given approval for a change in her schedule, (6) being told not to communicate with coworkers, and (7) being denied parking in a certain location.

subsequent to her encounter with Rios.  (Docket No. 46 at 16-19.)
At most, the proffered evidence suggests tension between Rios and
Arce, but these allegations are not actionable because they do not
rise past the level of minor annoyances or petty slights.  See
Burlington Northern, 548 U.S. at 68 (2006) (stating that minor
annoyances and petty slights do not qualify as materially adverse
actions under Title VII).  Furthermore, the Supreme Court has noted
that a court need only consider "the challenged retaliatory act,
not the underlying conduct that forms the basis of the Title VII
complaint.  Id. at 69.  The Court finds that the employment actions
which plaintiff alleges to be adverse do not give rise to an
actionable retaliation claim.

          Finally, even had Ms. Arce satisfied the first two
elements, she still fails to establish causality, the final element
of a retaliation claim.  Defendant contends that no causal
connection exists between the alleged adverse actions and the
protected activity of filing the EEO claim which led to the
Settlement Agreement of 2005.  (Docket No. 37 at 13.)
Specifically, defendant shows that three and a half years lapsed
between the time plaintiff signed the 2005 Settlement Agreement and
the time that any of the alleged "adverse employment actions"
occurred. (Docket No. 37 at 13.)  This extended period of time
between the protected activity of obtaining a settlement agreement
and the alleged adverse employment actions undermines any

retaliatory intent.  <u>See</u> <u>Gonzalez-Rodriguez v. Potter</u>, 605
F.Supp.2d 349, 365 (D.P.R. 2009) (finding a period of more than one
year between a settlement of an EEO charge and subsequent negative
treatment was too attenuated to establish a causal connection in
violation of Title VII's retaliation provision).

        Based on the above, this Court **GRANTS** defendant's motion
for summary judgment as to the plaintiff's retaliation claim.

    **C.   Hostile Work Environment**

        Plaintiff Arce alleges that she was subjected to a
hostile work environment in violation of Title VII based on her
hearing disability.  To succeed in a hostile work environment claim
under Title VII, plaintiff must show (1) that she is a member of a
protected class, (2) that she experienced uninvited harassment,
(3) that the harassment was based on her membership in the
protected class, (4) that the harassment was so severe or pervasive
as to create an abusive work environment, (5) that the harassment
was objectively and subjectively offensive, so that a reasonable
person would find it hostile or abusive and that plaintiff did
perceive it to be so, and (6) that some basis for employer
liability was established. <u>Torres-Negron v. Merck & Company, Inc.</u>,
488 F.3d 34, 39 (1st Cir. 2007) (citing <u>O'Rourke v. City of
Providence</u>, 235 F.3d 713, 728 (1st Cir. 2001)).  Title VII is
violated "[w]hen the workplace is permeated with 'discriminatory
intimidation, ridicule, and insult' that is sufficiently severe or

pervasive to alter the conditions of the victim's employment and creates an abusive working environment." Nat'l. R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116, 122 S.Ct. 2061, 2074 (2002) (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)).  A Court analyzes the claim by analyzing the "cumulative effect of the individual acts." Nat'l. R.R. Passenger Corp., 536 U.S. at 115.

        The Court has already determined that plaintiff Arce is disabled due to her hearing disability.  Plaintiff also maintained that she suffered the following uninvited harassment: (1) statements by Rios concerning plaintiff's work ethic; (2) failure to accommodate plaintiff and her work schedule; (3) an exchange concerning the relocation of plaintiff's desk, which resulted in interference with plaintiff's work performance, peace at work, and ridicule amongst her coworkers; (4) denial of parking in a particular space; and (5) "rough and rude orders" by Rios for plaintiff to resume work and for plaintiff and coworkers not to communicate.  (Docket No. 46 at 13-15.)  Arce satisfies the first two elements of a hostile work environment claim.  Still, plaintiff cannot ultimately prevail on this claim because she cannot establish that the actions taken were predicated on her disability or were sufficiently severe and pervasive enough to constitute a hostile working environment.

### 1.   Incidents Not Predicated on a Disability

Plaintiff failed to demonstrate that the harassment was clearly related to her hearing disability.  See Rivera v. Puerto Rico Aqueduct and Sewers Authority, 331 F.3d 183, 189 (2003) (stating that an employee claiming harassment must show that the conduct was directed against her because of her disability) (citing Oncale v. Sundowner Offshore Serv., Inc., 523 U.S. 75, 81 (1998)); see also Quiles-Quiles v. Henderson, 439 F.3d 1, 7-8 (2006). Ms. Arce's allegations stating that a disability-based discriminatory animus existed are not substantiated.  (Docket No. 46 at pp. 13-15.) Rather, plaintiff conflates the harassment claims relating to her bursitis with those relating to her hearing impairment, and she relies on conjectures stating that Rios' perception of plaintiff as "a liar" and "lazy" directly resulted from her hearing impairment.  (Docket No. 46 at pp. 13-14.)  Those unsupported statements and conjectures do not satisfy this element.

### 2.   Actions Not Severe and Pervasive

Defendant argues that plaintiff's allegations fail to meet the severe and pervasive standard of a hostile work environment claim.  (Docket No. 37 at 15.)  Whether harassment is "severe and pervasive" is determined by the following factors: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance;  and  whether  it  unreasonably  interferes  with  an

employee's work performance." <u>Marrero v. Goya de P.R., Inc.</u>, 304 F.3d 7, 18-19 (1st Cir. 2002) (quoting <u>Harris</u>, 510 U.S. at 21). Even when viewed in the light most favorable to plaintiff, a reasonable fact-finder would not conclude that the actions alleged rose to the level of severe and pervasive harassment. Plaintiff's allegations span the course of a few months and include various incidents of alleged harassment. (Docket No. 5.5-5.92.) The incidents are neither sufficiently related nor frequent in nature to establish severe and pervasive harassment based on plaintiff's disability. Even cumulatively, comments by Rios on USPS forms, "rough and rude orders," and scoldings are not severe or pervasive enough to satisfy this requirement. Federal employment discrimination laws do not establish a "general civility code"; thus, rude or ostracizing behavior is not enough to support a hostile work environment claim. <u>See</u> <u>Lee-Crespo v. Scherin-Plough del Caribe, Inc.</u>, 354 F.3d 34, 37 (1st Cir. 2003); <u>see also</u> <u>Noviello</u>, 398 F3d at 92. At most, the actions suffered by Arce may be perceived as offensive utterances or petty slights, but fail to rise to the level of humiliating or unreasonably offensive or threatening behavior.

Further, the single isolated incident regarding the relocation of plaintiff's desk is not sufficiently severe to satisfy the severe and pervasive test on its own. Plaintiff merely provides a blanket statement that the incident was "of such

severity that it [] created an abusive work environment," but fails to elaborate on this assertion.  (Docket No. 46 at 15.)  None of the evidence submitted by plaintiff suggests that this incident was anything more than an uncommon, though startling, occurrence hardly rising to the level of abuse.  (Docket No. 46-3 at 1, n. 3(b).) Unless a single incident is extremely serious, it does not amount to discriminatory changes in the terms and conditions of plaintiff's employment.  See Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 271 (2001).  Hostile work environment claims require the victim to suffer harassment "severe enough to compromise the victim's employment or educational opportunities." Wills v. Brown University, 184 F.3d 20, 26 (1st Cir. 1999).  Also, the First Circuit Court of Appeals has traditionally had a very high standard as to what qualifies as severe and pervasive.  If actions do not meet the pervasive requirement, even incidents that seem severe will not satisfy the requirement.  Compare Lipsett v. University of Puerto Rico, 864 F.2d 881, 898 (1st Cir. 1988) (demonstrating that constant sexual references, advances, and remarks relating to plaintiff's gender constitute a hostile work environment) with Pomales v. Cel see also Morgan v. Mass. Gen. Hosp., 901 F.2d 186, 192-93 (1st Cir. 1990) (holding that conduct was not sufficiently severe or pervasive where, over a two week period, a coworker engaged in unwanted physical contact).  Arce's subjective beliefs alone are insufficient to support her allegations, and she does not

demonstrate that her working conditions were objectively hostile or so severely altered, compromised, threatening, humiliating, or unreasonably interfered with her work performance so as to maintain a claim of hostile work environment.

For the reasons stated, the Court finds that plaintiff's allegations do not give rise to a hostile work environment claim. Thus, defendant's request that Arce's hostile environment claims under Title VII be dismissed is **GRANTED.**

## V.    CONCLUSION

Plaintiff has not presented definite, competent evidence to rebut defendant's motion for summary judgment. For the reasons stated above, defendant's motion for summary judgment is **GRANTED.** The claims against Postmaster General John E. Potter are **DISMISSED WITH PREJUDICE.**

Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, July 28, 2011.

                                        s/ Francisco A. Besosa
                                        FRANCISCO A. BESOSA
                                        UNITED STATES DISTRICT JUDGE